IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHEILA KNOX, | * |
| Plaintiff, | * |
| v. | *   Civil Case No. SAG-25-01302 |
| CONSUMER PORTFOLIO SERVICES, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Sheila Knox, who is self-represented, filed this complaint against Defendant Consumer Portfolio Services, Inc. ("CPS"), for claims relating to the financing of her auto loan. ECF 1. CPS filed a motion to dismiss the complaint, arguing that Plaintiff's claims were barred both jurisdictionally, pursuant to the *Rooker-Feldman* doctrine, and under principles of collateral estoppel. ECF 17. Plaintiff opposed the motion, ECF 24, and CPS filed a reply, ECF 25. This Court has carefully reviewed all of the filings and has determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, CPS's motion will be granted in part and denied in part.

**I. BACKGROUND**

The procedural facts are derived from Plaintiff's Complaint, ECF 1, along with the docket in this Court and in the related state court proceedings. On November 8, 2023, Plaintiff filed a lawsuit against CPS in state court, alleging essentially the same claims she alleges in this action.[1]

---

[1] Plaintiff's Complaint in this case is not a model of clarity because it focuses largely on the procedural history of what happened in state court and not on Plaintiff's underlying factual allegations against CPS. ECF 1. It is also not divided into counts or other clear statements

1

*See Knox v. CPS*, No. D-07-CV-23-017276 (Anne Arundel Cnty. Dist. Ct.); ECF 17-2 at 2–4. In response, on May 20, 2024, CPS moved to compel arbitration. ECF 17-2 at 6–19. When Plaintiff did not respond to the motion, on May 31, 2024, the state judge granted CPS's motion and compelled arbitration of Plaintiff's claims, also stating that if Plaintiff failed to initiate arbitration within 60 days, her claims would be dismissed with prejudice. ECF 17-2 at 21.

On September 12, 2024, because Plaintiff had not initiated arbitration, CPS moved to dismiss the case with prejudice.[2] ECF 17-2 at 23–28. On September 23, 2024, the state court judge granted the motion and dismissed Plaintiff's case with prejudice. ECF 17-2 at 30. Plaintiff filed a motion for reconsideration in the state court, which CPS opposed. ECF 17-2 at 32–61. On December 12, 2024, the state judge held a "zoom hearing," with Plaintiff and the judge attending in person, ECF 1 at 3, 4, and subsequently denied the motion for reconsideration but converted his dismissal order to dismissal without prejudice and directed Plaintiff to file for arbitration with the American Arbitration Association. ECF 17-2 at 63.

Instead, on January 27, 2025, Plaintiff filed a motion in state court asking to transfer that litigation to federal court. ECF 17-2 at 65–103. The state court judge denied that motion on February 11, 2025. ECF 17-2 at 105–58.

---

delineating her various legal claims. However, the instant Complaint repeatedly references "predatory loan practices" and CPS charging her a "21.99% interest rate," which are the same assertions made in her state court complaint. *Compare* ECF 1 *with* ECF 17-2. Both complaints also talk about prior legal action the Federal Trade Commission (FTC) brought against CPS in federal court in California in 2014, but do not cite any terms in the consent resolution in that case providing recourse for a private plaintiff. This Court ascertains no arguments brought in the instant action that were not also raised in the state court action, other than the arguments about the alleged improper actions by the state court judge.

[2] Plaintiff, who was also self-represented in state court, had filed a document entitled "Arbitration" in the state court on June 24, 2024. ECF 17-2 at 40–44. But it appeared to be addressed to the trial judge, and she had not filed it with the American Arbitration Association or otherwise sought to initiate proceedings with that entity.

2

On April 22, 2025, Plaintiff filed the instant lawsuit in this Court. ECF 1. Her federal Complaint contends that the state court judge engaged in "denial of due process" by failing to read her filings before ordering arbitration, and "abused its discretion" in holding what Plaintiff characterized as a "fast track" or "zoom hearing." ECF 1 at 2–5.

## II. ANALYSIS

Defendant argues that the *Rooker-Feldman* doctrine bars this Court from hearing Plaintiff's claims because Plaintiff's federal Complaint is effectively a challenge to the state court's arbitration order. ECF 17-1 at 5-7. In the alternative, Defendant argues that the doctrine of collateral estoppel precludes Plaintiff's claims because Plaintiff is effectively seeking to relitigate the issue of arbitrability that was decided by the state court. Because *Rooker-Feldman* is a jurisdictional bar, the Court will analyze the applicability of that doctrine first. *See Smalley v. Shapiro & Burson, LLP*, 526 F. App'x 231, 235 (4th Cir. 2013) ("This Court has consistently treated the *Rooker-Feldman* doctrine as jurisdictional, and '[b]ecause the *Rooker-Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis.'") (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 195-96 (4th Cir. 2001)).

### A. *Rooker-Feldman* Doctrine

The Supreme Court has long recognized that the jurisdiction of federal district courts is "strictly original," such that they may not entertain petitions for relief from allegedly unconstitutional state judgments. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923) (federal district court properly concluded that it could not entertain parties' petition to declare state court judgment "null and void."). In analyzing a complaint, district courts must endeavor to separate and preserve claims that survive judicial inspection from those that fail the jurisdictional threshold. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 286 (2005) ("*Exxon*") (describing

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983)). Courts may properly analyze challenges to state rules, laws, and regulations, but only insofar as the analysis "do[es] not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding." *Feldman*, 460 U.S. at 486; *see also id.* (federal district courts "do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional."). "[J]urisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997).

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284; *see also Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994); *Adkins v. Rumsfeld*, 464 F.3d 456, 463–64 (4th Cir. 2006). The Supreme Court has emphasized the narrow scope of the doctrine. *See Exxon*, 544 U.S. at 291–93. Federal district courts do not lack jurisdiction merely because "a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. Rather, the *Rooker-Feldman* doctrine applies only when: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" *Willner v. Frey*, 243 F. App'x 744, 746 (4th Cir. 2007) (quoting *Exxon*, 544 U.S. at 284) (alteration in *Willner*). To determine the satisfaction of the second and fourth conditions, specifically, the Fourth Circuit has stated that the "complaint . . . is the document [the court] examine[s] . . . ." *T.M. v. Univ. of Md.*

*Med. Sys. Corp.*, 139 F.4th 344, 352 (4th Cir. 2025). *petition for cert. filed* (U.S. Aug. 19, 2025) (No. 25-197).

In assessing the applicability of the *Rooker-Feldman* doctrine to Plaintiff's Complaint in the instant case, which she brought in federal district court before pursuing any appeal in Maryland's state courts, it is worth reviewing the evolution of the *Rooker-Feldman* doctrine with respect to judgments of lower state courts.

Prior to the Supreme Court's decision in *Exxon*, there was general consensus among the federal courts of appeals that the *Rooker-Feldman* doctrine applied to orders, including interlocutory orders, of lower state courts. *See Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458, 463 (6th Cir. 2003) (in holding that *Rooker-Feldman* barred the federal district court's review of a state court's order to compel arbitration, stating, "[W]e do not believe that lower federal courts should be prohibited from reviewing judgments of a state's highest court but should somehow have free rein to review the judgments of lower state courts."); *RLR Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 386 (6th Cir. 2021) (noting that its holding in *Pieper*, that "'the *Rooker-Feldman* doctrine does apply to interlocutory orders and to orders of lower state courts,'" aligned it with "the majority of circuits at the time.") (quoting *Pieper*, 336 F.3d at 462); *Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 319 (4th Cir. 2003) ("*Rooker-Feldman* . . . 'applies to interlocutory orders issued by state courts . . . because it cannot be the meaning of *Rooker-Feldman* that, while the inferior federal courts are barred from reviewing *final* decisions of state courts, they are free to review interlocutory orders.'") (quoting *Brown & Root, Inc.*, 211 F.3d at 199) (cleaned up).

In the wake of *Exxon*, which emphasized "the narrow ground occupied by *Rooker-Feldman*," *Exxon*, 544 U.S. at 284, many of the federal courts of appeals re-examined their case law on the scope of the doctrine, and a split emerged among them as to whether the *Rooker-*

*Feldman* doctrine continued to apply to orders of lower state courts or *Exxon* restricted application of the *Rooker-Feldman* doctrine to only those instances in which a federal district court plaintiff is effectively asking that court to review the final judgment of a state's *highest* court (*i.e.*, where the plaintiff has exhausted the full extent of the state court process). *See RLR Invs., LLC*, 4 F.4th at 391–92; *id.* at 399–401 (Clay, J., dissenting) (collecting cases). For its part, the Fourth Circuit Court of Appeals "contemplated" the latter proposition, *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 340 (4th Cir. 2022) (citing *Thana v. Bd. of License Comm'rs for Charles Cnty.*, 827 F.3d 314, 320 (4th Cir. 2016)), and in multiple opinions specifically noted that "'since *Exxon*, we have never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine.'" *Id.* (quoting *Thana*).

Very recently (July 2025), however, the Fourth Circuit again had occasion to review the history and development of the *Rooker-Feldman* doctrine, in *T.M. v. University of Maryland Medical System Corp.*, and joined the Sixth and Eighth Circuits in reiterating that, even after *Exxon*, "*Rooker-Feldman* is not limited to situations when a federal court plaintiff no longer has any recourse within the state system." *T.M.*, 139 F.4th at 353 ("Having carefully considered the matter—and acknowledging the contrary views of other circuits—we agree with the Sixth and Eight Circuits . . . .") (citing *RLR Invs., LLC*, 4 F.4th at 389–95; *Parker Law Firm v. Travelers Indem. Co.*, 985 F.3d 579, 584 (8th Cir. 2021)).[3]

To bolster its conclusion, the Fourth Circuit analyzed 28 U.S.C. § 1257(a), the statute that grants the Supreme Court appellate review of certain "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had" and "that forms part of the basis for

---

[3] This Court notes that a petition for certiorari was filed with the Supreme Court in *T.M. v. Univ. of Md. Med. Sys. Corp.* on August 19, 2025.

6

the *Rooker-Feldman* doctrine," *T.M.*, 139 F.4th at 354. The Fourth Circuit asserted that "the fact that Congress declared that even our Nation's 'one supreme Court' lacks appellate jurisdiction over state court decisions from which review may still be had within the State's own judicial system does not mean that 'inferior [federal] Courts' somehow gain appellate jurisdiction over those same decisions." *Id.* (quoting U.S. Const. art. III, § 1) (alteration in *T.M.*).

Defendant argues that Plaintiff's claims are barred by *Rooker-Feldman* because Plaintiff's "Complaint challenges the validity and enforceability of the State Court's order compelling arbitration." ECF 17-1 at 5. As previously noted, determining the thrust of Plaintiff's claims requires some inference; however, it would appear that Plaintiff asserts two types of claims: (1) Plaintiff alleges a number of improper actions by the state court judge in (a) adjudicating the motion to compel arbitration which Plaintiff alleges constituted "violation[s] of due process" and "Judicial misconduct,"[4] and (b) adjudicating her motion for reconsideration of the dismissal (entered for failure to comply with the arbitration order) which Plaintiff alleges constituted an "abuse of discretion";[5] and (2) Plaintiff reiterates allegations from her state court complaint pertaining to her underlying claims against Defendant, as well as assertions regarding the applicability of a 2014 consent resolution between Defendant and the FTC.[6]

---

[4] *See* ECF 1 at 2 ("[T]he judge never read the motion or the exhibits that was [sic] attached to the complaint because if he did he would never have set an arbitration hearing."); *id.* at 3 ("When a Judge fails to read a motion or complaint, it can be a violation of due process . . . ."); *id.* (alleging that "[b]y ordering arbitration between me and Consumer Portfolio when clearly they had broken the law," the judge had shown bias); *id.* at 4 ("example of Judicial misconduct is when the judge ignored the stipulations attached to the complaint contracted by the U.S. Attorney General's office and the FTC in 2014.").

[5] ECF 1 at 4–5 (alleging that the state court judge's decision to hold a "fast track hearing" on her motion for reconsideration of the dismissal constituted an "abuse of discretion.").

[6] *See* ECF 1 at 1, 5–7.

Addressing the first category, which this Court will call the "due process claims," this Court lacks jurisdiction over those claims under *Rooker-Feldman*. The first and third *Rooker-Feldman* conditions are easily satisfied. What *is* clear from the Complaint is that Plaintiff is alleging improper actions in the state court's decision to order arbitration, a decision to which Plaintiff objected[7] and, thus, the rendering of which constituted a "loss" for Plaintiff. In addition, the arbitration order became final in state court before Plaintiff filed this action.[8]

As for the second and fourth *Rooker-Feldman* conditions, this Court finds that the Complaint, though perhaps not explicitly, sufficiently satisfies those conditions. The second condition is that the plaintiff complains of injuries caused by the state-court judgment. Here, by Plaintiff's pleading, the arbitration order effectuated the alleged violations of Plaintiff's right to due process; that is, Plaintiff's alleged due process injuries stemmed from the state court's adjudication of the motion to compel arbitration and of Plaintiff's motion for reconsideration. *See Moseley v. Winston*, No. RDB-18-00810, 2018 WL 3740699, at *5 (D. Md. Aug. 7, 2018) (holding that *Rooker-Feldman* barred federal lawsuit where alleged constitutional due process injuries stemmed from a child support proceeding before a lower state court (plaintiff alleged that he had not been present at the hearing because he was improperly served)). *But cf. Hulsey v. Cisa*, 947

---

[7] In its motion to dismiss, Defendant has represented (and Plaintiff has not contested in her opposition) that Plaintiff did not file a response to Defendant's state court motion to compel arbitration. *See* ECF 17-1 at 2. However, Plaintiff's opposition to arbitration is indicated by other filings in the state court proceedings, including a document titled "Arbitration" that Plaintiff submitted to the state trial court (which Defendant attaches to its motion to dismiss). *See* ECF 17-2 at 40 (Plaintiff stated, "Your Honor I would have never ever arbitrated with people like this . . . ."); *id.* at 43 (Plaintiff stated, "[I]f you chose [sic] to go to trail [sic], perfect for me because I didn't want a[n] Arbitration any way . . . .").

[8] To the extent Plaintiff alleges improper actions in the adjudication of her motion for reconsideration of the dismissal for failure to comply with the arbitration order, these conditions are also satisfied. Her motion for reconsideration was denied (thus, making her a "loser" in that state court proceeding), and the denial occurred before Plaintiff filed her federal complaint.

F.3d 246, 250-51 (4th Cir. 2020) (finding the "injury caused by a state-court judgment" condition not satisfied where federal plaintiff sought redress "for injuries caused by the defendants' allegedly fraudulent conduct in prosecuting the defamation suits against him in state court." . . . "A plaintiff's injury at the hands *of a third party* may be 'ratified, acquiesced in, or left unpunished by' a state-court decision without being 'produced by' the state-court judgment.") (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 99 (2d Cir. 2005)) (emphasis added).

The fourth condition for application of the *Rooker-Feldman* doctrine captures the concern at the heart of the doctrine: has the federal plaintiff invited the federal district court to review and reject a state court judgment? As in, is the federal plaintiff effectively seeking an appeal in federal court of the state court judgment? Here, as Defendant notes, "Plaintiff stops short of explicitly asking this Court to overturn the State Court's judgment," ECF 17-1 at 7, and the only relief that Plaintiff explicitly requests is damages for "pain and suffering" resulting from Defendant allegedly having harassed her for car payments, allegations that pertain to Defendant's conduct preceding the state court proceedings (as discussed below). ECF 1 at 7. However, the Complaint also makes repeated reference to the alleged abuse of discretion, at least, being a basis for appeal to a higher court. ECF 1 at 5 ("It could be seen as abuse of discretion, which can open the door for an appeal to a higher court. . . . [T]he plaintiff can appeal the decision to a higher court that the judge acted improperly."). The Fourth Circuit has acknowledged that "it may sometimes be difficult to determine whether a plaintiff is asking a court to review and reject a state court judgment . . . ." *T.M.*, 139 F.4th at 352 (internal quotation marks and alterations removed); however, even absent Plaintiff's direct invocation of "appeal" or any express request for "review and reject[ion]," this

Court could conclude that such is Plaintiff's intention by her allegations of procedural impropriety.[9]

Moreover, the fact is that, if this Court is to assume that Plaintiff seeks some relief for the alleged due process violations, review and rejection of the order would be the only relief this Court could provide Plaintiff for her due process claims. *See Ludwig v. Berks Cnty.*, 313 F. App'x 479, 481 (3d Cir. 2008) (affirming district court's dismissal, on *Rooker-Feldman* grounds, of due process claims brought against state court judge "[b]ecause a ruling that Ludwig's due process rights were violated based on Judge Keller's rulings would have required the District Court to find that the state court judgment was erroneous . . . ."); *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004) ("[I]f in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action

---

[9] When it is clear that a federal district court is, in effect, being asked to "review and reject" a state court judgment, the relief explicitly requested in the complaint may not be determinative of the applicability of *Rooker-Feldman*. *See Efron v. Candelario*, 110 F.4th 1229, 1238 (11th Cir. 2024), *cert. denied,* 145 S. Ct. 1958 (Apr. 28, 2025) (where plaintiff argued that *Rooker-Feldman* did not apply to his claims of due process violations because his complaint exclusively sought damages and sought no relief to vacate or reverse the state-court judgment, the court rejected this argument, saying, "[A] plaintiff's claim for relief does matter. . . . But the claim for relief, alone, is not determinative: the question is still whether the substance—if not the form—of a plaintiff's claim requires a district court to review and reject a state court judgment.") (internal quotation marks omitted); *see also Gilbank v. Wood Cnty. Dep't of Human Servs.*, 111 F.4th 754, 771 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1167 (Feb. 24, 2025). In *T.M.*, the Fourth Circuit *emphasized* the nature of the relief requested by the plaintiff—"three forms of declaratory and injunctive relief directed against the Consent Order and its enforcement"—in rejecting the plaintiff's argument (in an attempt to avoid *Rooker-Feldman*) that her suit was *not* about injuries caused by a state court order, but rather, was "really about injuries inflicted by the [defendant]." *T.M.*, 139 F.4th at 352 (4th Cir. 2025). The court elaborated, "If this complaint were truly directed at injuries that have been or will be caused by the medical center, we would expect it to seek remedies addressing those harms, including damages or an injunction . . . ." *Id.* However, this Court does not find this language from *T.M.*, finding express request of declaratory and injunctive relief against a state court judgment to be determinative for the *Rooker-Feldman* analysis, to be in conflict with the views of the other Courts of Appeals described above, finding the *lack* of such express requests *not* determinative for that analysis.

10

that would render the judgment ineffectual, *Rooker-Feldman* is implicated.") (quoting *Jordahl v. Democratic Party*, 122 F.3d 192, 202 (4th Cir. 1997)); *Curley v. Adams Creek Assocs.*, 409 F. App'x 678, 680 (4th Cir. 2011) (per curiam) (concluding that *Rooker-Feldman* doctrine barred consideration of plaintiff's claim that her due process rights were violated when North Carolina state court disposed of a parcel of property without notice to her). Thus, this Court concludes that it lacks subject matter jurisdiction over Plaintiff's due process claims pursuant to the *Rooker-Feldman* doctrine.

Plaintiff's Complaint also appears to attempt to raise a second set of claims, constituting the same underlying claims that the state court previously determined were subject to arbitration. *See* ECF 1 at 1, 5–7. For this Court to reach Plaintiff's underlying claims, it would have to disregard the state court's judgment that those claims are subject to arbitration. There is an important distinction, however—with consequences for the appropriate basis for consideration of dismissal—between a federal plaintiff directly seeking review and rejection of a state-court arbitration order and that federal plaintiff, as here, *effectively* seeking to *relitigate the issue* of arbitrability by bringing in federal court the same underlying claims as she did in state court. The former, as discussed above, would be barred by *Rooker-Feldman*. The latter, however, implicates doctrines of *preclusion*; here, the doctrine of issue preclusion, or collateral estoppel, specifically.[10]

The Supreme Court, in *Exxon*, expressly stated that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine . . . ." *Exxon* 544 U.S. at 284. *See also Sartin v. Macik*, 535 F.3d 284, 287 n.1 (4th Cir. 2008) ("[A]s the Supreme Court made clear in *Exxon* . . . , the *Rooker-Feldman* doctrine only bars collateral attacks on state court judgments; it does not supplant

---

[10] The other strand of preclusion doctrine, claim preclusion or *res judicata*, was not argued by Defendant.

the normal rules of preclusion."). "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. 280, 293 (2005) (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)) (alteration in *Exxon*).[11]

Accordingly, the Fourth Circuit has stated, post-*Exxon*, that for claims brought in federal district court that, while similar to those raised in the state court proceedings, are alleging injury caused by a defendant and *not* a state judgment, those federal claims "do not challenge the state decision and are therefore 'independent' from that decision." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) (quoting *Exxon*, 544 U.S. at 293) (holding that federal plaintiff's allegations of discrimination in violation of federal and state law, raising similar claims to those he brought (and lost on) in state court, constituted an "independent" claim not barred by *Rooker-Feldman*). *See also T.M.*, 139 F.4th at 350 (noting *Exxon*'s instruction that a situation in which a federal plaintiff seeks to relitigate issues previously decided in state court "is properly addressed via 'principles of preclusion' rather than lack of subject matter jurisdiction."); *Hulsey*, 947 F.3d at

---

[11] The Fourth Circuit has cited favorably to an opinion from the Second Circuit Court of Appeals for this principle:

> Suppose a plaintiff sues his employer in state court for violating . . . anti-discrimination law and . . . loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) (quoting *Hoblock*, 422 F.3d at 87-88).

252 (where a federal plaintiff "asserts claims independent from the state-court decision," those claims "may encounter legal barriers, including preclusion, but the district court has jurisdiction to adjudicate those barriers . . . .").

Here, in addition to her allegations of due process violations, Plaintiff reiterates allegations from her state court complaint regarding "[p]redatory and deceptive Loan Practices," "unethical practices," and "fraud" on the part of defendant. *Compare* ECF 1 at 1, 5–7 *with* ECF 17-2 at 2–4 (Plaintiff's state court complaint, alleging "unfair trade practices" and "predatory lending and deceptive practices"). As previously noted, the only relief Plaintiff explicitly requests in her Complaint is compensatory and punitive damages, for an injury caused not by the state court judgment but by Defendant: "pain and suffering" caused by Defendant's "harassment through phone calls and illegal text messages reminding me of my car payment . . . ." ECF 1 at 7. These elements of the Complaint do not suggest a direct request for rejection of the state court's arbitration order; rather, they suggest that Plaintiff is attempting to relitigate her claims in federal court and, in so doing, question the state court's conclusion that the claims are subject to arbitration. Thus, *Rooker-Feldman* is *not* a bar to these claims, and this Court will address them with reference to principles of collateral estoppel.

B. **Collateral Estoppel**

The preclusion doctrine of collateral estoppel "forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (internal quotation marks omitted) (alteration in original). "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have

13

given it." *Sartin*, 535 F.3d at 287 (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)); *see also Balt. Flips Israel 2020 LLC v. Yosef*, 769 F.Supp.3d 370, 386 (D. Md. 2025) ("In determining the preclusive effect of a state court judgment, federal courts must, pursuant to the full faith and credit doctrine, apply the rendering state's law of collateral estoppel."). Thus, this Court must look to Maryland law to assess whether collateral estoppel precludes Plaintiff from asserting her claims regarding Defendant's conduct.

While other states have expressly decided that an order compelling arbitration should be given preclusive effect,[12] it does not appear that Maryland courts have directly taken up the question. Thus, this Court must examine the specific requirements of Maryland's collateral estoppel doctrine. Maryland courts have articulated a similar description of the collateral estoppel doctrine to that stated by the Fourth Circuit: "The doctrine of collateral estoppel precludes a party from re-litigating a factual issue that was essential to a valid and final judgment against the same party in a prior action." *Nat'l Union Fire Ins. Co. of Pittsburgh v. The Fund for Animals, Inc.*, 153 A.3d 123, 142 (Md. 2017) (internal quotation omitted). In Maryland, collateral estoppel applies if four conditions are satisfied:

    1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

    2. Was there a final judgment on the merits?

    3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

---

[12] *See Se. Res. Recovery Facility Auth. v. Montenay Intern. Corp.*, 973 F.2d 711 (9th Cir. 1992) (recognizing that California law gives an order compelling arbitration preclusive effect, as the order constitutes "the final order in a special proceeding").

   4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.* Here, Defendant argues in its motion to dismiss that Plaintiff is attempting to relitigate the issue of the arbitrability of Plaintiff's claims, which the state court decided in its order compelling arbitration. This Court will begin its analysis with examination of the second condition, regarding a "final judgment on the merits," the satisfaction of which is unclear.

  In its motion to dismiss, Defendant argues that the second condition is satisfied, because the state court's order compelling arbitration "constituted a final judgment on the issue of arbitrability." ECF 17-1 at 9. It is well settled in Maryland that an order compelling arbitration is a final judgment as it pertains to the question of the *appealability* of that judgment. *See Ford v Antwerpen Motorcars Ltd.*, 117 A.3d 21, 25 (Md. 2015) ("An order compelling arbitration is a final and appealable judgment of the trial court."); *Deer Auto. Grp., LLC v. Brown*, 163 A.3d 176, 184 (Md. 2017) ("We have determined that orders *granting* requests to compel arbitration are final, appealable orders because they terminate the underlying action and put the parties out of the court issuing the order.") (emphasis in original); *Rourke v. Amchem Prods., Inc.*, 835 A.2d 193, 202 (Md. Ct. Spec. App. 2003), *aff'd*, 863 A.2d 926 (Md. 2004) ("We hold that the court's order to compel arbitration constituted a final appealable judgment on the question of whether the issues raised in appellants' suit for declaratory relief were arbitrable."); *id.* at 201–02 ("A court's grant or denial of a motion to compel arbitration constitutes a final judgment on the issue of arbitrability even where . . . the motion to compel is taken not as a separate action but as part of the litigation process commenced on the underlying claim.").

Assuming, arguendo, that a judgment's finality as it pertains to its appropriateness for appeal indicates its finality as it pertains to preclusion,[13] what Defendant fails to address in its motion is Maryland's requirement that, for collateral estoppel to apply, there be a "final judgment on the merits."[14] Of course, a court's decision as to the arbitrability of a claim does not reach the merits of the underlying claim. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649-50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); *Rourke v.*

---

[13] *See Cook v. State*, 381 A.2d 671, 674 (Md. 1978) ("Finality is a concept which does not lend itself to concise delineation. Although this Court has never attempted a precise definition of the finality rule, as it relates to the doctrines of res judicata and collateral estoppel, we have indicated that the standard employed in such cases resembles that used to assess the finality of judgments for purposes of appellate review."); *Bryan v. State Farm Mut. Auto. Ins. Co.*, 45 A.3d 936, 940–42 (Md. Ct. Spec. App. 2012) (analyzing "finality" as it pertains to both appealability and res judicata).

[14] An alternative test for collateral estoppel has been articulated by some Maryland courts, under which there is no requirement of a final judgment "on the merits." This articulation derives from the Restatement (Second) of Judgments, quoted by Maryland's highest appellate court in the case of *Murray Int'l Freight Corp. v. Graham*, and describes the collateral estoppel doctrine thusly: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." 555 A.2d 502, 504 (Md. 1989) (emphasis added). Citing *Murray*, the same court (weeks later), put forward the following considerations for determining the application of issue preclusion: "1) the identity of parties, 2) the actual litigation of an issue of fact or law, 3) the essentialness of the determination to the judgment, and 4) the appealability of that determination by the party against whom the issue preclusion is being asserted." *Cassidy v. Bd. of Educ. of Prince George's Cnty.*, 557 A.2d 227, 233 (Md. 1989). Notably, these stated considerations did *not* include a requirement of a final judgment *on the merits*, and Maryland courts, citing *Cassidy*, went further, asserting that "[i]n order to invoke collateral estoppel, . . . there is no requirement that the claim in the current action be identical to the one in the prior action or that there be a final judgment on the merits; both of which are requirements for *res judicata*." *Esslinger v. Baltimore City*, 622 A.2d 774, 784 (Md. Ct. Spec. App. 1993) (emphasis in original). Maryland's high court has since, however, reiterated the requirement that there have been a final judgment on the merits. *See Bank of N.Y. Mellon v. Georg*, 175 A.3d 720, 751 (Md. 2017) ("[F]or both res judicata and collateral estoppel to apply, there must be a final judgment on the merits."); *Att'y Grievance Comm'n of Md. v. Sperling*, 248 A.3d 224, 238 (Md. 2021) (quoting *Murray Int'l Freight Corp.* for its articulation of the doctrine before stating, "In order for either of these doctrines [res judicata or collateral estoppel] to apply, there must have been a final judgment on the merits in the earlier action.").

16

*Amchem Prods., Inc.*, 863 A.2d 926, 940 (Md. 2004) ("The only issue for the court" in an adjudicating a petition to compel arbitration "is whether an enforceable agreement exists to arbitrate the underlying dispute; the court is not concerned with the merits of that dispute."); *Town of Chesapeake Beach v. Pessoa Const. Co., Inc.*, 625 A.2d 1014, 1018 (Md. 1993) (in evaluating whether an order denying petition to *stay* arbitration proceedings constituted a "final judgment," noting, "The relief sought by the moving party in such an action does not bear on the merits of the underlying claim; it relates solely to the forum to be used for the resolution of that dispute."). The pertinent question, then, is whether a court's adjudication of a motion to compel arbitration is, itself, a judgment "on the merits" *of that motion* for purposes of Maryland's collateral estoppel doctrine.[15]

While other federal courts have held that a "state court's determination [of arbitrability] was entitled to preclusive effect in the district court" because "the case was resolved on the merits of [the] motion to compel arbitration[,]" *Haber v. Biomet, Inc.*, 578 F.3d 553, 556–58 (7th Cir. 2009) (applying Indiana issue preclusion doctrine, which required, *inter alia*, that "the judgment in the former suit was rendered on the merits"), Maryland courts do not appear to have spoken definitively on this question (though, in defining the scope of appellate review, they have acknowledged that "[t]he trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, which we review *de novo*." *Walther v. Sovereign Bank*, 872 A.2d

---

[15] This Court notes that other federal courts have held collateral estoppel to apply to state court arbitration orders in instances where the state law being applied did not expressly require a final judgment *on the merits*. *See, e.g., Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 50–52 (1st Cir. 1997) (applying Massachusetts law on collateral estoppel, which required that "the issue must have been determined by a valid and binding final judgment . . ."); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 447–449 (2d Cir. 1995) (applying Alabama law on collateral estoppel, which provided that an order will constitute a final order "if the judge makes an express determination that there is no just reason for delay . . .") (internal quotation marks omitted).

17

735, 741 (Md. 2005)).[16] This Court acknowledges that Maryland's highest appellate court has, in asserting (in dicta) that federal case law suggests that dismissal of a case on *jurisdictional* grounds "is not a final judgment for purposes of res judicata or collateral estoppel," cited decisions from federal Courts of Appeals in which those courts also stated that "a jurisdictional dismissal [in a previous lawsuit] precludes only relitigation of the ground of that dismissal" in a subsequent lawsuit. *Bank of N.Y. Mellon*, 175 A.3d at 753–54 (quoting *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000)). By the same logic, this Court could reason that the state court's arbitration order, while not, itself, a final judgment on the merits of Plaintiff's claims, precludes relitigation of the grounds for that order. However, in the absence of any Maryland precedent stating that adjudication of a motion to compel arbitration is a judgment "on the merits"[17]—in the context of

---

[16] In *Cassidy*, the Maryland's high court stated that a state court's dismissal on procedural grounds would not preclude the *claim* under res judicata, but that the procedural issue upon which the dismissal was based "should" be precluded under collateral estoppel. *See Cassidy*, 557 A.2d at 233 ("As a general rule, dismissal for failure to satisfy a precondition 'is not an adjudication on the merits that would bar assertion of the same claim after satisfying the precondition . . . , but it should preclude relitigation of the same precondition issue.'") (quoting 18 Wright & Miller's *Federal Practice and Procedure* § 4437 at 168 (1988 Supp.)). As noted in note 14, *supra*, however, the collateral estoppel doctrine as articulated in *Cassidy*—which did not require that the previous judgment have been on the merits—has been called into question by later opinions.

[17] This Court also acknowledges that Maryland's high court has previously, in string citations, cited cases in which it was held that an order compelling arbitration was a final judgment on the merits. In *Horsey v. Horsey*, 620 A.2d 305, 312 (Md. 1993), the court cited a decision from the Fourth Circuit Court of Appeals in which the Fourth Circuit stated that "[w]hen . . . *the only dispute brought before the [federal] district court* is whether the parties have an obligation to arbitrate, the order compelling arbitration disposes of the whole case on its merits and is, therefore, a final order." *Durham Cnty. v. Richards & Assocs., Inc.*, 742 F.2d 811, 814 (4th Cir. 1984) (emphasis added); *see also id.* at 812 (noting that "there was no action pending on the claim underlying the dispute over arbitration"). This is not the posture of the instant case. In addition, the *Horsey* court cited a (very brief) Louisiana state court opinion in which the Louisiana court held that an arbitration order was a final judgment of the merits of a petition to compel arbitration. *See Horsey*, 620 A.2d at 312 (citing *Cajun Elec. Power Coop., Inc. v. La. Power & Light Co.*, 334 So.2d 554 (La. App. 1976)). However, the Maryland court was citing both this and the Fourth Circuit case for the proposition that an order to arbitrate is a final judgment for purposes of *appealability*; therefore, this Court declines to accord any precedential weight to this mention for purposes of the "on the merits" requisite for preclusion.

a preclusion analysis or otherwise—or clearly asserting that an order compelling arbitration has preclusive effect, this Court is reluctant to conclude that it should bar Plaintiff's claims, even as it anticipates that any subsequent motion to compel arbitration in this case may be largely duplicative of that adjudicated in the state court.[18]

Because this Court has not concluded that there was a "final judgment on the merits" in the state court proceeding, Maryland's four-part test for collateral estoppel will not be satisfied; thus, this Court need not reach the test's other three conditions.

### III.  CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss, ECF 17, will be GRANTED in part (with respect to any claims based on allegations of improper actions by the state court, which are dismissed without prejudice for lack of jurisdiction) and DENIED in part (with respect to Plaintiff's claims regarding Defendant's conduct). A separate Order follows.


Dated: October 17, 2025                                   /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge

---

[18] Defendant noted in its motion that it "does not waive and, in fact, expressly reserves its right to arbitrate Plaintiff's claims." ECF 17-1 at 1 n.1. This Court assumes, therefore, that a motion to compel arbitration may shortly follow.